## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN  DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RAYMOND FRANCIS SPENGLER, JR. | § | CASE NO. 16-60462 |
| | § | CHAPTER 7 |
| DEBTOR | § | |
| | § | |
| LARRY L. WASEM | § | |
| | § | ADVERSARY NO._____ |
| V. | § | |
| | § | |
| RAYMOND FRANCIS SPENGLER, JR. | § | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523 (a)(6) and OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 727 (a)(2)

**TO THE HONORABLE JUDGE OF SAID COURT**:

COMES NOW, Larry L. Wasem ("Wasem") creditor and party-in-interest in this case, making and filing this his Complaint Objecting to the Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6) and Objection to Dischargeability Pursuant to 11 U.S.C. § 727 (a)(2), and would respectfully show the Court the following:

## JURISDICTION AND NATURE OF COMPLAINT

1.      Wasem is a creditor and party-in-interest.  Wasem has standing to object to the dischargeability of Raymond Francis Spengler's debts described herein as a secured creditor in this matter.

2.      This adversary proceeding arises in connection with the above-styled and numbered

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT; PAGE 1

case now pending in this Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, and 11 U.S.C. §523. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and (I).

3.     This objection to dischargeability is filed within the time permitted by law.

4.     This Complaint is made pursuant to bankruptcy rule 7001, et seq., and 4005.

5.     The Debtor filed a voluntary Chapter 7 bankruptcy petition on July 28, 2016. On the same date the Debtor filed the voluntary petition, he also filed Schedules A through J and the Statement of Financial Affairs pursuant to Bankruptcy Rule 1005. The initial meeting of creditors was held on September 2, 2016 and concluded on the same date.

6.     On the date of the Chapter 7 bankruptcy filing the Debtor was indebted to Larry L. Wasem in the amount of $25,303.04. The debt arose from a Promissory Note signed by Raymond Frances Spengler, Jr. and payable to Larry L. Wasem in the amount of $50,000.00.

7.     The Debtor listed the Debt to Larry Wasem in part 2 of the Schedules as a nonpriority unsecured claim in the amount of $23,430.00. This listing was made in spite of the fact that Debtor was fully aware of the secured status of the claim both by insurance and by the 1946 Stinson airplane.

8.     On September 1, 2010, Spengler received the amount of $50,000.00 from Larry L. Wasem. In the return for the receipt of $50,000.00 Spengler delivered to Wasem a Promissory Note in the amount of $50,000.00. The indebtedness accrued interest at six percent (6%) with monthly payments scheduled at $1,521.10 per month. In order to secure the payment of the Promissory Note, Spengler granted a security interest in one (1) 1946 Stinson aircraft, model 108, Serial Number 108-

142, FAA Registration number N97142 with a value of $55,000.00. As additional security, Spengler also pledged a term life insurance policy by assignment of the policy to Wasem. The insurance policy was issued by Association Members Life Insurance Trust, ReliaStar Life Insurance Company of Minneapolis Minnesota to Larry L. Wasem. The Promissory Note is attached hereto and incorporated by reference herein for all purposes as Exhibit "A". The assignment of the life insurance policy is incorporated by reference herein for all purposes as Exhibit "B". The Aviation Security Agreement is attached hereto and incorporated by reference for all purposes as Exhibit "C".

9.       The Debtor defaulted under the terms of the Note by failing to make the payments as they came due. The Debtor failed to make the July 1, 2015 payment and all subsequent payments thereafter. As of July 1, 2015, the principal balance of the Note was $22,574.20. Since July 1, 2015 the Note and debt has accrued interest at the rate of twelve percent (12%) per annum, or a per diem rate $7.412778. As of September 21, 2016, the debt has accrued interest in the amount of $3,320.92. The total balance as of September 21, 2016 is $25,868.12.

10.      On March 11, 2007, the Stinson 108 experienced total engine failure and Spengler was forced to make a landing near Beale Air Force Base near Marysville, California. Despite the total engine failure, no damage occurred to the aircraft body or superstructure. After the forced landing, the aircraft was taken back to Sonoma Skypark in Sonoma, California. The only damage to the aircraft was the failed engine. All other parts were in tact, including radios and its instruments. From that point it was stored in the hangars at Sonoma Skypark pending a rebuilding of the engine.

11.      Upon information and belief, Spengler moved to Midland, Texas around 2012 or 2013 and, subsequently, in the dead of night carefully loaded the entire plane into an enclosed hauler

and took it Midland, Texas.  The removal of the Stinson from California was a violation of the

Security Agreement. The Stinson was then stored in Odessa, Texas at the Civil Air Patrol hangar for

some period of time, until Spengler transferred the aircraft to the hangar at Wildcatter Aviation, also

in the Midland area.

12.      Upon information and belief, the aircraft was sold by Spengler to one Dan Webre

sometime just prior to January 9, 2016.   When selling the aircraft, Spengler failed either,

inadvertently or intentionally, to transfer the data plate or have the sale recorded with the F.A.A as

is required by law for the exchange of ownership to occur.  Further the failure to transfer means Mr.

Spengler retained an interest in the plane.  Additionally, upon information and belief, the Stinson 108

was transferred a second time by Bill of Sale for an unknown amount to a third party.  The transfer

fails to meet the minimum requirements.

13.      The second transfer, likewise, was never registered nor recorded with the F.A.A.  The

data plate has not been transferred and the Stinson still retains its status as being the property of

Spengler, subject to the Security Agreement.

14.      The sale of the aircraft was done in contravention of the Security Agreement and the

rights of the Plaintiff in the collateral.  The sale of the plane was done with intent and the sale of the

plane caused injury to Plaintiff for loss of that collateral.

## DENIAL OF THE DISCHARGE OF THE DEBT PURSUANT TO §523 (A)(6)

15.      Section 523 (a)(6) provides that "a discharge under section 727, 1141, 228(a), 1228(b)

or 1328(b) of this title does not discharge an individual debtor from any debt -- (6) for willful and

malicious injury by the debtor to another entity or to the property of another entity."

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT; PAGE 4

16.     The Debtor's conversion of the plane by sale to a third party constitutes a willful and malicious injury to the rights and property of the Plaintiff.

17.     The Plaintiff sold the aircraft knowing it was subject to the Security Agreement of the Plaintiff and Spengler sold the airplane in disregard to the Plaintiff's rights to that property in an apparent attempt to deprive Plaintiff of his rights in the property.

## DENIAL OF THE DISCHARGE OF THE DEBT PURSUANT TO §727 (a)(2)

18.     Pursuant to 11 U.S.C. §727(a)(2)(A), the plaintiff must show: 1) the transfer or concealment of property, 2) belonging to the Debtor, 3) within one year of the filing of the petition, 4) performed with the intent to hinder, delay, or defraud a creditor or officer fo the estate.  In this case, the Debtor/Spengler has either transferred or concealed the Stinson Aircraft, putting it out of the reach of Wasem, who held the valid security interest in the property.

## DAMAGES

19.     Plaintiff is entitled to a judgment in the amount of $25,363.09 as of the date of filing.  Plaintiff is further entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of this case and the collection of the unpaid debts.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the Court to determine that Defendant's debt to Plaintiff is excepted from discharge, and for such other and further relief to which Plaintiff may show herself to be justly entitled to receive.

Respectfully submitted,


RITCHESON, LAUFFER & VINCENT, P.C.
Two American Center
821 ESE Loop 323, Suite 530
Tyler, Texas  75701
TEL:   903/535-2900
FAX:   903/533-8646
charlesl@rllawfirm.net


BY: _____
CHARLES E. LAUFFER, JR.
State Bar No. 11989400

ATTORNEYS FOR LARRY L. WASEM

# PROMISSORY NOTE
## (Secured by Life Insurance and Aircraft Security Agreement)

$50,000.00                      **Santa Rosa, California**                      September 1, 2010

FOR VALUE RECEIVED, the undersigned RAYMOND FRANCIS SPENGLER, JR. (hereinafter referred to as "Borrower"), hereby promises to pay to LARRY L. WASEM (hereinafter referred to as "Holder"), or order, at 414 Aviation Boulevard, Santa Rosa, California, 95403-1069, or at such other place as Holder may from time to time designate, in lawful money of the United States of America the principal sum of FIFTY THOUSAND AND NO/100THS DOLLARS ($50,000.00), together with interest on the unpaid principal amount hereof, at the rate provided in Paragraph 1, below. The entire unpaid principal amount of this Note together with all accrued and unpaid interest and all other charges hereunder shall be due and payable in full without claim, notice or demand on the Maturity Date. As used herein, the term the "Maturity Date" means the first to occur of the following: (a) acceleration for any reason under the terms of this Note or any of the Security Documents; or (b) the date which is thirty-six months after the Note Date, i.e., the specific date of September 1, 2013. The "Note Date" is the date first above set forth in this Note.

1.  Interest and Payments.

    1.1.  Effective Rate. Interest accruing hereunder shall be at the Effective Rate. For purposes of this Note, the term "Effective Rate" shall mean the Original Rate or the Maturity Rate established as follows:

        1.1.1.  Original Rate. Except as otherwise set forth in Paragraph 1.1.2, below, the Effective Rate shall be a rate per annum of six percent (6.00%) (the "Original Rate").

        1.1.2.  Maturity Rate. From and after the Maturity Date until the time this Note is paid in full, this Note shall earn interest on the unpaid principal amount hereof at the lower of: (i) twelve percent (12.00%) per annum or (ii) the highest applicable rate permitted by law (the "Maturity Rate").

    1.2.  Payments. Interest in advance from the Note Date to the first (1st) day of the first (1st) full calendar month succeeding the Note Date shall be due and payable on execution hereof by Borrower. Monthly payments of principal and interest in arrears (at the Effective Rate) in the amount of ONE THOUSAND FIVE HUNDRED TWENTY-ONE AND 10/100THS DOLLARS ($1,521.10) shall be due and payable on the first (1st) day of each and every calendar month commencing with the first (1st) full calendar month following the Note Date and continuing thereafter until the Maturity Date, at which time the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon and other charges hereunder, shall be fully due and payable. Interest calculated at the Maturity Rate shall be due and payable in full on demand, anything herein to the contrary notwithstanding.

2.  Method of Payment. Each payment (including prepayments) of principal of, or interest on, this Note shall be made in immediately available funds by the Borrower to the Holder at the address indicated in Paragraph 8, below, or such other location as Holder may direct in writing. All interest hereunder shall be computed on the basis of a year consisting of three hundred sixty (360) days, but shall be based upon the actual number of days elapsed at the applicable Effective Rate. All payments which are applied at any time by the Holder hereof to indebtedness evidenced by this Note, without regard to their characterization or earmarking by Borrower, unless Holder otherwise elects, shall be allocated by the Holder in the following order of priority:

    2.1.  to amounts due and payable under the terms of any of the Security Documents;

EXHIBIT

A

2.2.     to late charges or other amounts other than principal and interest accrued under this Note;

2.3.     to interest accrued under this Note; and

2.4.     to principal of this Note.

3.     LATE CHARGE.  IF ANY PAYMENT HEREUNDER IS NOT RECEIVED BY HOLDER WITHIN FIVE (5) DAYS AFTER THE DUE DATE THEREOF, BORROWER SHALL PAY TO HOLDER WITHOUT CLAIM, NOTICE OR DEMAND A LATE PAYMENT CHARGE EQUAL TO SIX PERCENT (6%) OF THE AMOUNT OF PRINCIPAL AND/OR INTEREST DUE AND DELINQUENT TO DEFRAY THE ADMINISTRATIVE COSTS AND EXPENSES SUFFERED BY HOLDER BY REASON OF SUCH DELINQUENCY, IT BEING ACKNOWLEDGED THAT THE ACTUAL DAMAGES SUFFERED BY HOLDER AS A RESULT OF SUCH DELINQUENCY ARE EXTREMELY DIFFICULT OR IMPRACTICABLE TO ASCERTAIN AND THAT SAID LATE CHARGE REPRESENTS A REASONABLE ATTEMPT TO FIX SUCH DAMAGES. SAID SUM IS IN ADDITION TO, AND NOT IN LIEU OF, ANY INTEREST AT THE MATURITY RATE THAT MAY BE DUE OR PAYABLE. COLLECTION OF SUCH LATE CHARGE SHALL NOT EXCUSE THE PERFORMANCE OF THE TERMS OF THIS NOTE NOR PREJUDICE HOLDER'S RIGHT TO ENFORCE ANY RIGHT OR REMEDY WHICH IT MAY HAVE FOR THE COLLECTION OF PRINCIPAL AND/OR INTEREST OR OTHERWISE UNDER THE TERMS OF THIS NOTE, THE SECURITY DOCUMENTS, OR APPLICABLE LAW.

4.     Prepayment.  The undersigned reserves the right to prepay this Note in full or in part, without premium or penalty, but with accrued interest (attributable to the principal prepaid) paid to the date of prepayment.

5.     Security; Accelerating Transfers.  This Note is secured by a certain Aircraft Security Agreement of even date herewith (the "Security Agreement"), and may be secured by other security documents therein described, executed and delivered by Borrower to Holder encumbering that certain 1946 Stinson aircraft, Model 108, Serial No. 108-142, FAA Registration No. N97142 (the "Property"). Additionally, Borrower shall obtain a term life insurance policy in an amount not less that FIFTY THOUSAND DOLLARS ($50,000.00) through the Airline Owners and Pilots Association naming Larry L. Wasem as beneficiary and maintain such policy until the Maturity Date (hereinafter referred to as the "Life Insurance").  All of said documents, including, without limitation, the Security Agreement, are herein referred to as the "Security Documents". The terms of the Security Documents are incorporated herein by this reference as though set forth in full.

6.     Events of Default and Remedies.  Any one of the following occurrences shall constitute an "event of default" under this Note:

6.1.     The failure by Borrower to make any payment of principal or interest due under this Note as and when the same becomes due and payable in accordance with the terms hereof and the continuation of such failure for five (5) days, or the failure to pay the entire unpaid principal and all accrued but unpaid interest hereunder on or before the Maturity Date;

6.2.     The failure by Borrower to maintain the Life Insurance;

6.3.     The occurrence of any default under this Note other than as described in the preceding Paragraph 6.1 and the continuation of such default for five (5) days; or

6.4.     The occurrence of any "Event of Default" as defined under the Security Documents, or any one or more of them. For purposes of this Paragraph 6.4, with respect to any event or occurrence which constitutes an event of default hereinafter solely by reason of its constituting a default under a document or instrument other than this Note, to the extent (if any) that such other

document or instrument provides a grace or cure period with respect to such default, the same grace or cure period, the only such period, shall apply with respect thereto under this Note.

Upon the occurrence of any event of default: (i) the entire unpaid principal balance of, and any unpaid interest then accrued on, and any other amounts owing under or evidenced by this Note shall, at the option of Holder and without notice or demand of any kind to Borrower or any other person, immediately become due and payable; and (ii) the Holder shall have and may exercise any and all rights and remedies available at law or in equity and also any and all rights and remedies provided in the Security Documents, or any one or more of them, including, but not limited to exercise of rights and remedies as a secured party under the California Uniform Commercial Code, in such order and manner as Holder may determine in Holder's sole discretion, or simultaneously, or by judicial or non-judicial process.

The remedies of the Holder, as provided herein or in any of the Security Documents shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Holder, and may be exercised as often as occasion therefore shall arise. No act of omission or commission by the Holder, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same, such waiver or release to be effected only through a written document executed by the Holder and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

7.    Attorneys' and Experts' Fees and Costs.  Borrower agrees to pay immediately upon demand all costs and expenses of Holder, including reasonable attorneys' and experts' fees and costs: (i) if after default this Note be placed in the hands of an attorney or attorneys for collection, (ii) if Holder finds it necessary or desirable to secure the services or advice of one or more attorneys with regard to collection of this Note against Borrower, any guarantor or any other party liable therefore or to the protection of its rights under this Note, or any of the Security Documents, or (iii) if Holder seeks to have the Property described in the Security Agreement abandoned by or reclaimed from any estate in bankruptcy, or attempts to have any stay or injunction prohibiting the enforcement or collection of this Note, prohibiting the enforcement of any Security Document lifted by any bankruptcy or other court. If Holder shall be made a party to or shall intervene in any action or proceeding, whether in court or before any governmental agency, affecting the Property or the title thereto or the interest of the Holder under any Security Document, including without limitation any form of condemnation or eminent domain proceeding, Holder shall be reimbursed by Borrower immediately upon demand for all costs, charges and attorneys' and experts' fees incurred by Holder in any such case, and the same shall be secured by said Security Document as a further charge and lien upon the Property.

8.    Notices.  Any notice, demand or request required hereunder shall be given in writing (at the addresses set forth below) by any of the following means:  (i) personal service; (ii) electronic communication, whether by telex, telegram, telecopying or electronic mail (e-mail); (iii) overnight courier; or (iv) registered or certified, first class mail, return receipt requested.

**To Borrower:**
Raymond Francis Spengler
21870 Eighth Street East
Sonoma, CA  95476
Telephone:
Cellular Telephone:
FAX:
E-Mail:

**To Holder:**
Larry L. Wasem
414 Aviation Boulevard
Santa Rosa, CA  95403-1069
Telephone:
Cellular Telephone:
FAX:  70
E-Mail:

Such addresses may be changed by notice to the other parties given in the same manner as above provided. Any notice, demand or request sent pursuant to either subsection (i) or (ii) hereof shall be deemed received upon such personal service or upon dispatch by electronic means. Any notice, demand or request sent pursuant to subsection (iii) shall be deemed received on the business day immediately following deposit with the overnight courier, and, if sent pursuant to subsection (iv) shall be deemed received forty-eight (48) hours following deposit into the mail.

9.   Miscellaneous.

9.1.   Headings; Gender. The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof. All words and phrases shall be taken to include the singular or plural number, and the masculine, feminine or neuter gender, as may fit the case.

9.2.   Waiver. Borrower for itself and for its successors, personal representatives, heirs and assigns, all guarantors, endorsers and signers, and their respective successors, personal representatives, heirs and assigns, hereby waives all valuation and appraisement privileges, presentment and demand for payment, protest, notice of protest and nonpayment, dishonor and notice of dishonor, bringing of suit, lack of diligence or delays in collection or enforcement of this Note and notice of the intention to accelerate, the release of any party liable, the release of any security for debt, the taking of any additional security and any other indulgence or forbearance, and all said parties are and shall be jointly and severally, directly and primarily, liable for the amount of all sums owing and to be owed hereon, and agree that this Note and any or all payments coming due hereunder may be extended or renewed from time to time without in any way affecting or diminishing their liability hereunder.

9.3.   Severability. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the greatest extent permitted by law.

9.4.   Modification. No waiver of any breach of or event of default, default or failure of condition under the terms of this Note or any one or more of the Security Documents, or any obligations secured thereby, shall be implied from any failure of Holder to take, or any delay by Holder in taking, action with respect to any concurrent or subsequent breach of or event of default, default or failure of condition or from any previous waiver of any similar or unrelated breach of or event of default, default, or failure of condition. A waiver by Holder of any term of this Note or any one or more of the Security Documents, or any of the obligations secured thereby must be made in writing executed by Holder, shall be limited to the express written terms of such waiver, and shall not be construed as a waiver or release of any subsequent event of default, default or failure of condition.

9.5.   Joint Obligations. If this Note is executed by more than one person or entity as Borrower, the obligations of each such person or entity shall be joint and several. If Borrower is a partnership, all general partners of Borrower, whether or not signatory hereto, shall be directly and personally liable hereunder, jointly and severally. No such person shall be a mere accommodation maker, and each such person shall be primarily and directly liable hereunder.

9.6.   Holder. The terms of this Note shall apply to, inure to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. Whenever used, the words "Borrower", "holder", or "Holder", shall be deemed to include the respective heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns of the Borrower, the holder, and Holder as applicable.

9.7.   Taxes. The Borrower agrees that for federal and state income tax purposes they will treat the payment of all interest due hereunder on the cash basis of accounting.

9.8.    <u>Governing Law; Venue</u>.  This Note shall be governed by and construed under the laws of the State of California.  Venue for any action brought under this Note or any of the Security Documents shall be Sonoma County, California.

9.9.    <u>Time</u>.  Time is of the essence of this Note and each provision hereof.

9.10.    <u>Binding</u>.  This Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

9.11.    <u>No Merger</u>.  In the event Borrower acquires or succeeds to different estates in any property covered by any one or more of the Security Documents with or without any outstanding intervening estates or interests, no merger of estates or interests shall be deemed to have occurred without Holder's express written consent.  In the event Holder acquires or succeeds to any prior or subordinate interest in any property covered by any one or more of the Security Documents, with or without any outstanding intervening interests, no merger of such interests shall be deemed to have occurred without the express written election of Holder.

9.12.    <u>Definitions</u>.  Each term capitalized but not defined in this Note which is capitalized and defined in the Security Documents shall have the same meaning for purposes of this Note as for purposes of the Security Documents, and vice versa.

9.13.    <u>Usury</u>.  All agreements between Borrower and Holder are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, or otherwise, shall the amount paid or agreed to be paid to the Holder hereof for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under the applicable usury law.  If, from any circumstances whatsoever, fulfillment of any provision hereof or of the Security Agreement, or any other of the Security Documents, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstance, Holder shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder as of the date such amount is received or deemed to be received by Holder and not to the payment of interest.  This provision shall control every other provision of all agreements between Borrower and Holder.

9.14.    <u>Section 580b</u>.  To the extent permitted by applicable law, Borrower waives the benefits of California Code of Civil Procedure Section 580b.

9.15.    <u>Negotiability</u>.  This Note is a negotiable instrument.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

BORROWER:

RAYMOND FRANCIS SPENGLER, JR.

## ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL

| | |
|---|---|
| **Assignee:** | Larry L. Wasem |
| | 414 Aviation Boulevard |
| | Santa Rosa, CA  95403-1069 |
| **Group Policy Number:** | |
| **Certificate Number:** | SPER21149A |
| **Policyholder:** | Association Members Life Insurance Trust |
| **Insurer:** | ReliaStar Life Insurance Company |
| | P.O. Box 20 |
| | Minneapolis, MN  55540 |
| | Issued through: |
| | AOPA Insurance Products |
| | P.O. Box 21057 |
| | Santa Barbara, CA  93121-1057 |
| **Insured:** | Raymond F. Spengler, Jr. |
| | 28170 Eighth Street East |
| | Sonoma, CA  95476 |
| **Debtor:** | Raymond F. Spengler, Jr. |
| | 28170 Eighth Street East |
| | Sonoma, CA  95476 |

1.      For Value Received, the undersigned hereby assign, transfer and set over to Assignee, his heirs, personal representatives, successors and assigns, the insurance policy identified by the Policy Number issued by the Insurer and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of the Insured and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph 3 hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy.  The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

2.      It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:

2.1.      The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

2.2.      The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

2.3.      The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time, from other persons, and to pledge or assign the Policy as security for such loans or advances;

2.4.      The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall

-1-

**EXHIBIT**

B

notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and

2.5.    The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

3.    It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

3.1.    The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

3.2.    The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the right of the Assignee hereunder.

4.    This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the Debtor or the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between the Debtor or any of the undersigned and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

5.    The Assignee covenants and agrees with the undersigned as follows:

5.1.    That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed.

5.2.    That the Assignee will not exercise the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due nor, until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

5.3.    That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary (upon receipt by the Assignee of evidence satisfactory to Assignee that the beneficiary has been informed of the existence of this assignment) or any election of an optional mode of settlement.

6.    The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph 5.2 above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee.  The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer.  Checks for all or any part of the sums payable under the Policy and assigned herein shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

-2-

7.     The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

8.     The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph 5.2 above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the Debtor, the undersigned, or any of them.

9.     The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities, in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

10.     In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

11.     Each of the undersigned declares that no proceedings in bankruptcy are pending against him or her and that his or her property is not subject to any assignment for the benefit of creditors.

Signed as of the 1st day of September, 2010.

INSURED:                                          BENEFICIARY:

_____        _____
RAYMOND F. SPENGLER, JR.                   LARRY L. WASEM

WITNESS:                                          WITNESS:

_____        _____
Printed Name: Allen Christenson            Printed Name: Allen Christensen
Address: 5725 Westwind Bl Stelul          Address: 5725 Westwind Bl Stelw
         Santa Rosa, CA 95403                      Santa Rosa CA 95403

Duplicate received and filed at the home office of the Insurer in _____, this
_____ day of _____, 2010.

By: _____
       Authorized Officer

-3-

**STATE OF CALIFORNIA**
**COUNTY OF SONOMA** } SS

On August 19, 2010, before me, _Cindy A Lembo-Somma_, Notary Public, personally appeared RAYMOND F. SPENGLER, JR., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Executed under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

(this area for official notarial seal)

Notary's Signature _____

---

**STATE OF CALIFORNIA**
**COUNTY OF SONOMA** } SS

On August 19, 2010, before me, _Cindy A Lembo-Somma_, Notary Public, personally appeared LARRY L. WASEM, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Executed under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

(this area for official notarial seal)

Notary's Signature _____

-4-

**Paperwork Reduction Act Statement:** This information is collected to provide evidence of security interest. The information is used by the aircraft registry in the recording of security interests. We estimate that it will take approximately 30 minutes to complete this form. The information is required to perfect a security interest in the described collateral. (This form or equivalent may be used.). This information is public information, and no confidentiality is provided. An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a currently valid OMB control number. The number associated with this collection is 2120-0042.

### DEPARTMENT OF TRANSPORTATION
### FEDERAL AVIATION ADMINISTRATION
### CIVIL AVIATION REGISTRY
### AIRCRAFT REGISTRATION BRANCH
P. O. Box 25504
Oklahoma City, Oklahoma 73125
### AIRCRAFT SECURITY AGREEMENT

---

NAME & ADDRESS OF DEBTOR
Raymond Francis Spengler, Jr.
21870 Eighth Street East
Sonoma, CA  95476

NAME & ADDRESS OF SECURED PARTY/ASSIGNOR
Larry L. Wasem
414 Aviation Boulevard
Santa Rosa, CA  95403-1069

ASSIGNED/NAME & ADDRESS OF ASSIGNEE

102361411405
$5.00 08/21/2010

ABOVE SPACE
FOR FAA USE ONLY

---

Date:  September 1, 2010

A security interest is hereby granted to the secured party on the following described collateral:
AIRCRAFT (FAA registration number, manufacturer, model, and serial number):
N97142, 1946 Stinson, Model 108, Serial No. 108-142

**NOTICE:  ENGINES LESS THAN 550 HORSEPOWER AND PROPELLERS NOT CAPABLE OF ABSORBING 750 OR MORE RATED SHAFT HORSEPOWER ARE NOT ELIGIBLE FOR RECORDING.**
ENGINES (manufacturer, model, and serial number):

PROPELLERS (manufacturer, model, and serial number):

SPARE PARTS LOCATIONS (air carrier's name, city, and state):

together with all equipment and accessories attached thereto or used in connection therewith, including engines of  N/A   horsepower, or the equivalent, and propellers capable of absorbing  N/A   rated takeoff shaft horsepower, described above, all of which are included in the term aircraft as used herein.
The above described aircraft is hereby mortgaged to the secured party for the purpose of securing in the order named:
**FIRST:**  The payment of all indebtedness evidenced by and according to the terms of that certain promissory note, herein below described, and all renewals and extensions thereof.

Note bearing date  09-01-10  executed by the debtor and payable to the order of  Larry L. Wasem   in the aggregate sum of $ 50,000  with interest thereon at the rate of  6.00   per centum per annum, from date, payable in installments as follows:

The principal and interest of said note is payable in  36   installments of $ 1,521.10  each on  1st  day of each successive month beginning with the 1st  day of  10-10  . The last payment of $ 1,521.10  is due on the  1st  day of  10-13  .

**SECOND:**  The prompt and faithful discharge and performance of each agreement of the debtor herein contained made with or for the benefit of the secured party in connection with the indebtedness to secure which this instrument is executed, and the repayment of any sums expended or advanced by the secured party for the maintenance or preservation of the property mortgaged hereby or in enforcing their rights hereunder.  Said debtor hereby declares and hereby warrants to the said secured party that they are the absolute owner of the legal and beneficial title to the said aircraft and in possession thereof, and that the same is free and clear of all liens, encumbrances, and adverse claims whatsoever, except as follows:  (If no liens other than this mortgage, indicate "none".)

AC 8050-98 (2/06)

EXHIBIT
C

OKLAHOMA
OKLAHOMA CITY

2010 AUG 24   PM 2 24

AIRCRAFT REGISTRATION BR
FILED WITH FAA

It is the intention of the parties to deliver this instrument in the state of ___California___ .

Provided, however, that if the debtor, their heirs, administrators, successors, or assignees shall pay said note and the interest thereon in accordance with the terms thereof and shall keep and perform all and singular the terms, covenants, and agreements in this security agreement, then this security agreement shall be null and void.

Time is of the essence of this security agreement.  It is hereby agreed that, if default be made in the payment of any part of the principal or interest of the promissory note secured hereby at the time and in the manner therein specified, or if any breach be made of any obligation or promise of the debtor herein contained or secured hereby, or if any or all of the property covered hereby be hereafter sold, leased, transferred, mortgaged, or otherwise encumbered without the written consent of the secured party may deem himself insecure, then the whole principal sum unpaid upon said promissory note, with the interest accrued thereon, or advanced under the terms of this security agreement, or secured thereby, and the interest thereon shall immediately become due and payable at the option of the secured party.

Upon default, secured party may at once proceed to foreclose this mortgage in any manner provided by law, or the secured party may at its option, and they are hereby empowered so to do, with or without foreclosure action, enter upon the premises where the said aircraft may be and take possession thereof; and remove and sell and dispose of the same at public or private sale, and from the proceeds of such sale retain all costs and charges incurred by secured party in the taking or sale of said aircraft, including any reasonable attorney's fees incurred; also all sums due him on said promissory note, under any provisions thereof, or advanced under the terms of this security, and interest thereon, or due or owing to the said secured party, under any provisions of this security agreement, or secured hereby, with the interest thereon, and any surplus of such proceeds remaining shall be paid to the debtor, or whoever may be lawfully entitled to receive the same.  If a deficiency occurs, the debtor agrees to pay such deficiency forthwith.

Said secured party or his agent may bid and purchase at any sale made under this mortgage or herein authorized, or at any sale made upon foreclosure of this security agreement.

In witness whereof, the debtor has hereunto set ___his___ hand and seal on the day and year first above

**ACKNOWLEDGMENT:**
(If required by applicable local law)

NAME OF DEBTOR  RAYMOND FRANCIS SPENGLER, JR.

SIGNATURE(S) (IN INK) _____
                           (If executed for co-ownership, all must sign)

TITLE _____
        (If signed for a corporation, partnership, owner, or agent)

---

## ASSIGNMENT BY SECURED PARTY

For value received, the undersigned secured party does hereby sell, assign, and transfer all right, title, and interest in and to the foregoing note and security agreement and the aircraft covered thereby, unto the assignee named on the face of this instrument at the address given, and hereby authorizes the said assignee to do every act and thing necessary to collect and discharge the same.  The undersigned secured party warrants and agrees to defend the title of said aircraft hereby conveyed against all lawful claims and demands except the rights of the maker.  The undersigned secured party warrants that the secured party is the owner of a valid security interest in the said aircraft.  (A Guaranty Clause or any other provisions which the parties are desirous of making a part of this assignment should be included in the following space.)

Dated this _____ day of _____ .

**ACKNOWLEDGMENT:**
(If required by applicable local law)

NAME OF SECURED PARTY (ASSIGNOR) _____

SIGNATURE(S) (IN INK) _____
                           (If executed for co-ownership, all must sign)

TITLE _____
        (If signed for a corporation, partnership, owner, or agent)

THIS FORM IS ONLY INTENDED TO BE A SUGGESTED FORM OF SECURITY AGREEMENT WHICH MEETS THE RECORDING REQUIREMENTS OF TITLE 49, UNITED STATES CODE, AND THE REGULATIONS ISSUED THEREUNDER.  IN ADDITION TO THESE REQUIREMENTS, THE FORM OF SECURITY AGREEMENT SHOULD BE DRAFTED IN ACCORDANCE WITH THE PERTINENT PROVISIONS OF LOCAL STATUTES AND OTHER APPLICABLE FEDERAL STATUTES.  THIS FORM MAY BE REPRODUCED.

SEND, WITH APPROPRIATE FEE, TO:   AIRCRAFT REGISTRATION BRANCH
                                  P.O. BOX 25504
                                  OKLAHOMA CITY, OKLAHOMA  73125-0504

AC 8050-98 (2/06)

AIRCRAFT REGISTRATION BR
FILED WITH FAA
AIRCRAFT REGISTRATION BR
2010 AUG 24 PM 2 24
OKLAHOMA CITY
OKLAHOMA